UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

K.D., *by her parents and next friends*, J.D. and T.D., *et al.*,

    Plaintiffs,

v.

JOSHUA STARR, *in his official capacity as Superintendent of Montgomery County Public Schools, et al.*,

    Defendants.

Civil Action No. TDC-13-3263

## MEMORANDUM OPINION

Plaintiff K.D., a minor, is a student with a learning disability who was previously enrolled in public schools in Montgomery County, Maryland. She has been diagnosed with Attention Deficit Hyperactive Disorder ("ADHD") and a mixed receptive-expressive language disorder that impairs her language functioning. On November 4, 2013, K.D. and her parents, Plaintiffs J.D. and T.D. (the "Parents") (collectively, "Plaintiffs"), filed this action alleging that Defendant Montgomery County Public Schools ("MCPS") failed to provide K.D. with a free appropriate public education under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 794 *et seq.* (2012), by denying her accommodations to which she was entitled. They also allege that the Administrative Law Judge ("ALJ") who presided over the administrative proceedings erred in dismissing their due process complaint before the hearing. Presently pending are the parties' cross-motions for summary judgment. ECF Nos. 17, 21. The Court heard oral argument on the motions on September 16, 2014, and the motions are now ripe for disposition.

Because Plaintiffs have sufficiently alleged that MCPS discriminated against K.D. on the basis of her disability, the Court concludes that the ALJ erred in dismissing their due process complaint without reaching the merits. Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment and denies Defendants' Cross-Motion for Summary Judgment. This case is remanded to the ALJ for further proceedings on the merits.

## BACKGROUND[1]

Congress has enacted two statutes that focus, in some measure, on ensuring that students with disabilities have access to a free public education equal to that of non-disabled students.[2] The first is the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* (2012). The IDEA requires, among other things, that states accepting federal funds provide a free appropriate public education to students with disabilities. § 1412(a)(1). A "free appropriate public education" entails special education and related services that are provided to the student without charge, but also meet state educational standards and conform to an individualized education plan ("IEP") developed specifically for that student. § 1401(9). As a baseline, the education provided to the student under the IDEA must confer some educational benefit. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 200 (1982).

The second such statute is Section 504. Unlike the IDEA, Section 504 is an anti-discrimination statute. Section 504 prohibits federally funded programs from discriminating

---

[1] At oral argument, the parties agreed that the scope of this Court's review is limited to the due process complaint and the ALJ's decision. Accordingly, unless otherwise noted, the following facts are presented as alleged in the due process complaint. ECF No. 4-19.

[2] A third statute, Title II of the Americans with Disabilities Act ("ADA"), makes it unlawful to deny an individual with a disability the benefit of a public service, such as an education, on the basis of her disability. 42 U.S.C. § 12132 (2012). The ADA, however, is not at issue in this case.

against an otherwise qualified individual solely on the basis of her disability. 29 U.S.C. § 794(a). As part of this requirement, federal regulations implementing Section 504 mandate that schools provide a free appropriate public education to students with disabilities. 34 C.F.R. § 104.33. To meet the free appropriate public education requirement under Section 504, schools must provide, at no cost, regular or special education and related aids and services designed to meet the needs of the student. §§ 104.33(b), (c). Like the IDEA, this is achieved through an accommodations plan, § 104.35, but the free appropriate public education requirement differs from the IDEA in that the measure of whether the education conferred under Section 504 is sufficient is that it must meet the student's needs "as adequately" as the needs of a non-disabled student, §§ 104.33(b), (c). *See Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008).

This case concerns whether a student was subject to discrimination on the basis of disability under Section 504 because she was not afforded sufficient accommodations to receive a free appropriate education comparable to non-disabled students. K.D. is a 15-year-old ninth grade student currently attending a private school in Montgomery County, Maryland. She previously attended various Montgomery County public schools. Since kindergarten, K.D. has been reading below grade level. In March 2009, while K.D. was in fifth grade, a doctor diagnosed K.D. with ADHD, which impairs her ability to pay attention and concentrate, and a nonverbal learning disability. Shortly thereafter, MCPS found her eligible for an individualized accommodation plan under Section 504 (the "504 Plan"). Although the 504 Plan provided K.D. preferential classroom seating to minimize distractions and an extra set of books to keep at home, K.D. continued to experience difficulty with paying attention, comprehending reading material, retaining content, following directions, and understanding written and oral communication.

Concerns also remained about her expressive language ability. With those issues in mind, the Parents increasingly relied on re-teaching K.D. the school curriculum at home in the evenings.

In March 2010, while K.D. was in sixth grade, a team conducted an annual review and updated K.D.'s 504 Plan to include more accommodations, such as allotting her extra time on graded assignments, providing her completed study guides at least three days before tests and quizzes, and breaking her assignments into smaller, more manageable segments, known as "chunking." Still, the Parents remained troubled by K.D.'s progress. In March and April 2010, another doctor evaluated K.D. and diagnosed her with a significant mixed-receptive expressive language disorder. Given K.D.'s receptive, expressive, and language processing limitations, the doctor recommended an IEP for K.D. instead of the 504 Plan.[3] The Parents also sought an evaluation from a speech pathologist in April 2011, who confirmed K.D.'s receptive and expressive language disorder and other language weaknesses. They provided both the reports to MCPS.

On September 27, 2010 and January 14, 2011, while K.D. was in seventh grade, the Parents met with the school's Educational Management Team to convey their ongoing concerns

---

[3] Though IEPs and 504 plans are conceptually similar in that both are designed to provide a free appropriate public education to students with a disability, the two plans are held to different standards. IEPs establish a specific educational plan for a student in accordance with comprehensive, strict criteria in which a school board representative, a teacher, and the student's parents outline the student's current educational performance, set short term performance goals, describe the student's accommodations, and set the evaluation criteria for determining whether the student is making progress. 20 U.S.C. § 1414(d)(1)(A)(i). In comparison, 504 plans are developed through an evaluation process that focuses on providing reasonable accommodations to a student with a disability to allow the student to receive a comparable education to a non-disabled student. 34 C.F.R. §§ 104.33, 104.35; *Guidelines for Educators and Administrators for Implementing Section 504 of the Rehabilitation Act of 1973 – Subpart D*, U.S. Dep't of Educ. Off. for Civ. Rts., 2010, at 3–4, 28–39, Appendix C, ECF No. 30-1. An IEP is sufficient to satisfy the free appropriate public education requirement under Section 504, but a 504 plan will not necessarily satisfy the same requirement under the IDEA. *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008); *Kimble v. Douglas Cnty. Sch. Dist. RE-1*, 925 F. Supp. 2d 1176, 1182 (D. Colo. 2013).

about K.D.'s academic struggles, particularly on tests and quizzes. They again relied on afterschool instruction by hiring a professional tutor to assist K.D. with her executive functioning.[4]

After K.D.'s annual review meeting in April 2011, MCPS revised her 504 Plan to include an accommodation for instructions to be repeated to her. Based on the recommendation of a doctor who had evaluated K.D., the 504 Plan also included a "read to" accommodation, which generally provides that tests are read in their entirety to a student. The 504 Plan also required an accommodation that K.D. receive a copy of the teacher's notes daily at the beginning of class to help her follow along. By June 2011, the Parents asked MCPS to consider whether K.D. was eligible for special education. Though an MCPS team recognized K.D.'s need for continued support, it did not find her eligible for special education. Rather, it updated her 504 Plan again to include repetition of instructions during class and assessments, as well as an accommodation that teachers provide copies of test directions and format at least three days in advance. Once more, and despite the additional accommodations, the Parent's remained concerned about K.D.'s performance on tests and quizzes.

In August 2011, a fourth doctor evaluated K.D. and found major areas of weakness in her mental organization, semantic encoding, working memory, expressive language, and executive functioning. The doctor concluded that anxiety, lack of confidence, and a dependence on adult-directed learning intensified K.D.'s language processing and executive functioning issues. The Parents forwarded that doctor's report to MCPS and again, on October 27, 2011, met with school

---

[4] Executive functioning controls the ability to plan, organize, remember details, and manage time. *What Is Executive Functioning*, National Center for Learning Disabilities (2014), http://www.ncld.org/types-learning-disabilities/executive-function-disorders/what-is-executive-function. When executive functioning is compromised, individuals may have difficulty finishing work on time, meaningfully including past knowledge in discussions, evaluating ideas, and reflecting on their own work. *Id.*

5

officials to discuss their concerns. The following month, an MCPS team found that K.D. remained ineligible for special education and declined to conduct additional evaluations or seek additional information regarding her educational needs. In response, K.D.'s parents expressed their continuing disagreement with MCPS's position that the 504 Plan met K.D.'s needs.

The Parents had another meeting with an MCPS team on January 13, 2012, during K.D.'s eighth grade year, and expressed their ongoing belief that the 504 Plan was not effective and that the school was not fully implementing the accommodations. During the meeting, and over the Parents' objection, the team discussed removing K.D.'s "read to" accommodation from the 504 Plan. Though the meeting adjourned without a decision whether to remove the "read to" accommodation, the team later decided on its own to remove it. K.D. struggled without the aid of a human reader.

During eighth grade, there were several instances in which K.D. did not consistently receive the accommodations afforded to her under the 504 Plan. In some classes, for example, teachers consistently did not provide K.D. with their notes at the beginning of class or even the next day. She also did not receive completed study guides three days before all tests and quizzes. Rather, in some classes, she would receive them only a day before. The failure to provide timely notes and study guides persisted throughout the entire school year. The Parents believe this failure negatively affected K.D.'s academic performance, but that teachers masked the issue by allowing her to take tests repeatedly and disregarding her initial test scores to salvage her grades.

K.D. also failed all but one of her science labs despite seeking additional help from teachers. She did not understand what she was doing wrong and had difficulty following her teachers and completing the assignments within the allotted time. When the Parents sent

teachers multiple emails and requests for help, K.D.'s teachers responded by requiring K.D. personally to ask for her 504 Plan accommodations during tests, such as requiring her to ask for preferred seating and additional time on tests, despite her difficulty with self-advocacy and her trouble processing and understanding language. Teachers also required K.D. to ask for her "read to" accommodation in the middle of testing. Consequently, she never received some accommodations because she did not ask for them.

Due to their ongoing concern that K.D. was not receiving the support she needed, the Parents enrolled her in a students with learning disabilities program at a private school for ninth grade, where she received several of the accommodations provided for in the 504 Plan, including preferential seating, extended time on tests, books on tape, and assistance with note-taking. K.D. did well at private school, and the Parents shared her progress that school year with MCPS. Her private school teachers reported that K.D. was continuing to improve, but that she still had difficulty with peer relationships, participating in class, and understanding oral and abstract information. Having reviewed the reports, an MCPS team nevertheless found K.D. ineligible for special education and that her previously drafted 504 Plan was sufficient to meet her needs.

On June 20, 2013, the Parents filed an administrative due process complaint, alleging that MCPS violated Section 504, with the Office of Administrative Hearings in Baltimore County, Maryland, through which they sought reimbursement for private school tuition and the cost of K.D.'s repeated neuropsychological testing. *See* Req. Mediation/Due Process Hr'g at 1, 7, ECF No. 4-19. Under the regulations implementing Section 504, school systems that receive federal funds are required to provide parents with a system of procedural safeguards, including an impartial hearing, to challenge school evaluations and placement of children with disabilities. *See* 34 C.F.R. § 104.36. This requirement can be fulfilled through a process designed to meet the

procedural safeguards mandated by the IDEA. *Id.* In Maryland, this requirement is fulfilled by such an IDEA process, under which a parent of a child with disabilities may file a due process complaint with the Office of Administrative Hearings seeking a hearing before an ALJ who reviews the educational records, hears relevant testimony, and makes a determination whether the child received a free appropriate public education. Md. Code Ann., Educ. § 8-413(a)–(g) (West 2014).

On August 28, 2013, an ALJ dismissed the due process complaint, concluding that the Parents did not sufficiently allege bad faith or gross misjudgment by MCPS under the standard articulated in *Sellers ex rel. Sellers v. School Board of Manassas, Virginia*, 141 F.3d 524 (4th Cir. 1998). Admin. Order on Mot. Dismiss ("ALJ Dismissal Order"), at 10–11, ECF No. 4-3. The ALJ also stated that the Parents, in arguing that K.D. was denied a free appropriate public education under Section 504, had asserted what should have been a claim under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* (2012).

Plaintiffs appealed that decision to this Court. *See* Md. Code Educ. § 8-413(j) ("[A]ny party to the hearing may file an appeal from a final decision of the Office of Administrative Hearings to the federal District Court for Maryland . . . ."). According to the Complaint filed with this Court, Plaintiffs now seek (1) an order vacating the ALJ's decision and (2) damages from MCPS amounting to tuition reimbursement for having enrolled K.D. in private school during the 2013–2014 school year. On March 21, 2014, Plaintiffs moved for summary judgment, seeking an order remanding the case to the ALJ for further proceedings on the merits.[5]

---

[5] Given the discrepancy between the relief sought in the Complaint and in their Motion for Summary Judgment and that, procedurally, this is an appeal of an administrative decision dismissing the case before reaching the merits of the issues or making any factual findings, Plaintiffs made clear during oral argument that the primary relief they seek is an order vacating the ALJ's decision and remanding the case for further proceedings.

*See* Proposed Order, ECF No. 17-3. In its Cross-Motion for Summary Judgment, filed on May 16, 2014, MCPS seeks an order affirming the ALJ's decision.

## DISCUSSION

### I. Standard of Review

The Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In doing so, the Court views the facts in a light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), who has the burden of showing that a genuine dispute exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of *material fact*." *Anderson*, 477 U.S. at 247–48 (emphasis in original). A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A genuine issue of material fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248.

In this instance, and in accordance with IDEA procedures, Plaintiffs appeal a ruling of an ALJ of the Maryland Office of Administrative Hearings. Md. Code Ann., Educ. § 8-413(j). In reviewing such state administrative decisions, courts are required to "make an independent decision based on a preponderance of the evidence, while giving due weigh to the state administrative proceedings." 20 U.S.C. § 1415(i)(2)(C); *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 103 (4th Cir. 1992). Findings of fact of hearing officers are entitled to be considered

"*prima facie* correct." *Doyle*, 953 F.2d at 105. Because the ALJ dismissed the due process complaint without considering the merits, the parties agreed at oral argument that this Court's review of the ALJ's decision is under a *de novo* standard.

## II. Discrimination Under Section 504

### A. Requirement of Discriminatory Intent

In dismissing the Parents' due process complaint, the ALJ concluded that the complaint failed to state a claim because it had not alleged facts suggesting "bad faith or gross misjudgment" by MCPS, as required by *Sellers*. ALJ Dismissal Order at 9–11. Plaintiffs argue that the ALJ erred in dismissing the complaint without holding a due process hearing because Section 504 does not require a showing of bad faith or gross misjudgment, but instead requires only that MCPS's actions were discriminatory in effect. *See* Pls.' Mem. Supp. Mot. Summ. J. at 12, ECF No. 17-1. Plaintiffs are incorrect.

Federal regulations have interpreted Section 504, which prohibits discrimination against people with disabilities, 29 U.S.C. § 794(a), to require public schools to provide children with disabilities a free appropriate public education, 34 C.F.R. § 104.33. To establish a violation of Section 504 and its implementing regulations, plaintiffs must show that they were discriminated against solely on the basis of disability. *Sellers*, 141 F.3d at 528; *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). In *Sellers*, the United States Court of Appeals for the Fourth Circuit held that, in the specific context of a claim that a school system has not provided a free appropriate education to a child with a disability, a finding of discrimination based on disability requires a showing of bad faith or gross misjudgment by the school system. *Sellers*, 141 F.3d at 529. *See also Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982) ("[E]ither

bad faith or gross misjudgment should be shown before a [Section] 504 violation can be made out, at least in the context of education of handicapped children.").

Plaintiffs rely on *Alexander v. Choate*, 469 U.S. 287 (1985), and a series of other cases to argue that, where plaintiffs do not seek compensatory or punitive damages, the correct standard to apply under Section 504 is whether "the school system engaged in actions having *the effect* of depriving an otherwise qualified individual of the benefits of a federally-funded program." Pls.' Mem. Supp. Mot. Summ. J. at 12–13 (emphasis added). Those cases, however, either do not examine Section 504 within the context of alleged discrimination against a student with a disability through an inadequate accommodation plan, *see, e.g., Choate*, 469 U.S. at 289 (concerning Medicaid), or conflict with the Fourth Circuit's standard in *Sellers, see, e.g., CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 529–30 (7th Cir. 2014) (finding that a Section 504 violation could be established through either intentional discrimination or the failure to provide an accommodation that effectively denies the child the benefit of public education).

Although some courts may apply a different standard in cases seeking compensatory damages, *see S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013), *Sellers* does not limit itself to instances where plaintiffs seek compensatory or punitive damages, *see Sellers*, 141 F.3d at 529 (noting that "either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children," without limiting the holding to cases where damages are sought). In the Fourth Circuit, therefore, plaintiffs must show bad faith or gross misjudgment by the school system to establish Section 504 discrimination in the education context.[6]

---

[6] During the administrative proceedings, the Parents agreed that under *Sellers*, bad faith or gross misjudgment must be shown. *See* ALJ Dismissal Order at 9; Pl.'s Mem. Supp. Mot. Summ. J. at 19 n.6, ECF No. 17-1. MCPS argues that Plaintiffs cannot now advance an argument wholly at

Such a high bar in this specific context is justified by the delicate role that courts play in reviewing education decisions. *See Doe v. Arlington Cnty. Sch. Bd.*, 41 F.Supp.2d 599, 609 (E.D. Va. 1999) ("The 'bad faith or gross misjudgment' standard is extremely difficult to meet, especially given the great deference to which local school officials educational judgments are entitled."). Courts have shied away from substituting their own judgment for that of an educator, particularly given that "'[e]xperts often disagree on what the special needs of a [child with a disability] are, and the educational placement of such children is often necessarily an arguable matter.'" *Sellers*, 141 F.3d at 529 (quoting *Monahan*, 687 F.2d at 1170). *See also MM ex rel. DM & EM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 532 (4th Cir. 2002) (noting that courts should be "reluctant to second-guess professional educators" once a procedurally proper accommodations plan is in place). For this reason, in the absence of bad faith or gross misjudgment, a plaintiff cannot establish a Section 504 violation, even where parents disagree with an education decision or show that the child required different accommodations. *Sellers*, 141 F.3d at 529.

### B. Allegations of Bad Faith or Gross Misjudgment

Plaintiffs maintain that, even under the *Sellers* requirement of a showing of bad faith or gross misjudgment, they sufficiently alleged that MCPS acted in bad faith or with gross misjudgment when it failed to implement the 504 Plan fully and refused to increase or change accommodations as K.D. required additional support. What constitutes bad faith or gross

---

odds with the one they advanced below. Defs.' Mem. Supp. Cross-Mot. Summ. J. & Opp. Pls.' Mot. Summ. J. at 5, ECF No. 21-1. Because the Court concludes that plaintiffs must show bad faith or gross misjudgment under *Sellers*, specifically in the context of developing and implementing an individualized accommodation plan for the education of a student with a disability, it need not address whether the Parents have waived this argument by failing to raise it before the ALJ. Nor need the Court address the parties' dispute over whether tuition reimbursement constitutes compensatory or punitive damages.

misjudgment in this context has not been well defined. The Fourth Circuit has indicated that allegations of negligence, standing alone, are insufficient. *Sellers*, 141 F.3d at 529. Nor is it sufficient to label conduct in a conclusory manner as having been performed in bad faith or with gross misjudgment. *See Charlotte-Mecklenburg Bd. of Educ. v. B.H. ex rel. C.H. & W.H.*, No. 3:07cv189, 2008 WL 4394191, at *7 (W.D.N.C. Sept. 24, 2008) (citing *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). In the context of individualized accommodations plans, there must be "more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist." *Sellers*, 141 F.3d at 529 (quoting *Monahan*, 687 F.2d at 1170). Other courts suggest that failing to provide a required accommodation is insufficient, *see B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 888 (8th Cir. 2013) ("[S]tatutory noncompliance alone does not constitute bad faith or gross misjudgment."), and that the standard requires activity that "depart[s] substantially from accepted professional judgment, practice or standards as to demonstrate that the persons responsible actually did not base the decision on such a judgment," *M.Y. ex rel. J.Y. & D.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 890 (8th Cir. 2008) (quoting *Monahan*, 687 F.2d at 1170–71) (internal quotation marks omitted).

In that vein, courts have found no bad faith or gross misjudgment where a school board failed to recognize a 504 plan's ineffectiveness for several years before taking corrective action, *see Petty v. Hite*, No. DKC-13-1654, 2013 WL 6843576, at *1, *3 (D. Md. Dec. 26, 2013), and where a school board could support its decision to isolate a student with a developmental disability from nondisabled students for two-thirds of the school week, *see Doe*, 41 F. Supp. 2d at 602, 605–06, 609.

Courts applying the bad faith or gross misjudgment standard, however, have not necessarily required direct evidence of personal animosity, ill will, or malice. In *B.M.*, a case relied upon by MCPS,[7] the Eighth Circuit noted that "[u]nder some circumstances, notice of a student's disability coupled with delay in implementing accommodations can show bad faith or gross misjudgment." *B.M.* 732 F.3d at 888 (citing *M.P. ex rel. K. and D.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982–83 (8th Cir. 2003)). In *M.P.*, a case in which the parents of a child with schizophrenia who had received accommodations alleged a Section 504 violation when the school failed to take appropriate steps to address harassment by other students once his disability was made public, the court found that summary judgment was inappropriate because bad faith or gross misjudgment could be inferred from the school's failure to return the mother's phone calls to discuss the harassment, its offer of inadequate accommodations to address the harassment, and the rescission of an offer to pay for transportation costs. *M.P. ex rel. K. and D.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982–83 (8th Cir. 2003).

Within the Fourth Circuit, district courts have similarly found bad faith or gross misjudgment in the absence of direct evidence of personal animosity or ill will. One court found, under Rule 12(b)(6), sufficient allegations of bad faith or gross misjudgment where a school system that had previously provided adequate accommodations to a student while in middle

---

[7] Although *B.M.* found no Section 504 violation, it did so at the summary judgment stage, after full factual development. *B.M.*, 732 F.3d at 888. Moreover, it is distinguishable from this case in that the parent, not the school, initially resisted evaluation of the student under IDEA and opposed placement in special education classes. *Id.* at 885–88 (finding that the school district made "numerous and continuous attempts to assist" the student). The main disagreements were over whether the school district adequately complied with certain statutory procedural requirements, which the school district later remedied, and the school district's insistence that it evaluate the student under the IDEA before considering Section 504 accommodations. *Id.* There were no allegations of accommodations rescinded without reason, accommodations consistently not provided by teachers, or of a requirement that the student specifically request accommodations before they would be provided. *Id.*

school suspended a student with an emotional disability for fighting while, among other deficiencies, failing to implement significant portions of the student's 504 plan in high school and altering the plan without the parents' knowledge or involvement. *See N.T. v. Balt. City Bd. of Sch. Comm'rs*, No. JKB-11-356, 2011 WL 3747751, at *6–8 (D. Md. Aug. 23, 2011) ("Without evidence that these important decisions were based upon reason, one could infer that N.T. has been denied educational benefits solely based on his disability."). Similarly, a court found sufficient allegations of bad faith or gross misjudgment under Section 504 to deny a motion to dismiss where a school system, despite numerous attempts by the parents, refused for years to evaluate a student with disabilities, relied on invalid test results to determine that the student needed minimal, if any, accommodations, and refused to provide the student with doctor-recommended services. *See B.H.*, 2008 WL 4394191, at *7–8.

Here, a review of the due process complaint before the ALJ reveals that, although MCPS initially provided accommodations to address K.D.'s needs and added certain new accommodations when requested by the Parents or warranted by medical recommendations, there came a point during K.D.'s eighth grade year at which MCPS's diligence in addressing her needs appears to have declined markedly. Specifically, in January 2012, MCPS rescinded an accommodation it had previously provided – K.D.'s "read to" accommodation – without reason, over the Parents' protests, without any indication that MCPS notified them beforehand, and despite the early recommendation of one of K.D.'s doctors and the knowledge that evaluators were continuing to find additional areas of weakness. *See N.T.*, 2011 WL 3747751, at *7, *8 ("[A] jury could reasonably infer that the abrupt decisions to discontinue significant parts of [the student's] educational program, without proper assessments and evaluations, were made in bad faith or were gross misjudgments.").

In the same time frame, certain teachers, again for no proffered reason, required K.D. to advocate for her own testing accommodations despite being aware that her language difficulties significantly hindered her ability to do so, thereby depriving her of those accommodations. This practice is particularly problematic because it would unnecessarily require K.D. to take steps that her disability made particularly difficult in order to receive the very accommodations that addressed those concerns. Plaintiffs also alleged that, up to and during that school year, teachers consistently failed to honor the agreed-upon accommodations, such as by failing to deliver to K.D. teacher notes (required before class) and study guides (required three days prior to tests) in a timely manner or, in some cases, at all. MCPS argues that this constitutes negligence at best, but when viewed among the other failures, it could indicate something more troubling. Taken together, these facts could reasonably support the conclusion that MCPS was no longer acting in good faith in seeking to address K.D.'s needs fully.[8] *See N.T.*, 2011 WL 3747751, at *6–8; *M.P.*, 326 F.3d at 982–83.

That K.D.'s educational progress reportedly improved when she moved to a private school, where her accommodations were provided in a more systematic and rigorous way, provides further support for this conclusion. *Cf. Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207 n.28 (1982) (noting, in a case under the

---

[8] At oral argument, MCPS argued that it is generally understood that unlike when implementing an IEP, teachers are not required to provide 504 plan accommodations unless the student, within her ability, expressly asks for them. When the Court requested that the parties submit legal authority to support or refute this position, MCPS was unable to identify any such authority. Indeed, the guidelines offered by the U.S. Department of Education's Office for Civil Rights support the opposite view – that teachers must affirmatively provide 504 plan accommodations regardless of whether the student asks for them. *See Guidelines for Educators and Administrators for Implementing Section 504 of the Rehabilitation Act of 1973 – Subpart D*, U.S. Dep't of Educ. Off. for Civ. Rts., 2010, at 92 ("Regular education teachers must implement the provisions of Section 504 plans when those plans govern the teachers' treatment of students for whom they are responsible. If the teachers fail to implement the plans, such failure can cause the school district to be in noncompliance with Section 504.").

IDEA, that a student's actual educational progress is an important factor in determining whether she has been afforded an educational benefit); *M.M.*, 303 F.3d at 532 (noting that a district court failed to consider a student's educational progress when determining whether she received a free appropriate public education under the IDEA).[9]

The allegations in the due process complaint are certainly not as detailed as the facts presented in cases brought to the district court after a due process hearing on the merits, *see, e.g. N.T.*, 2011 WL 3747751, at *5–8, or at the summary judgment stage, *see, e.g., B.M.* 732 F.3d at 887–88; *M.P.*, 326 F.3d at 977–79, 982–83, but the Court is mindful that at this stage of the proceedings, Plaintiffs have not presented any evidence – rather, their request is for the opportunity to present evidence at a due process hearing. After factual development, it may be that Plaintiffs are unable to offer sufficient evidence to establish bad faith or gross misjudgment, and MCPS may well offer evidence to establish more benign explanations for its actions. But at this stage of the proceedings, where the Court is required to take the allegations in the light most favorable to Plaintiffs, the Court concludes that the allegations in the due process complaint sufficiently suggest bad faith and gross misjudgment to overcome dismissal for failure to state a claim. Because the due process complaint should not have been dismissed, Plaintiffs are entitled to summary judgment.

---

[9] *Rowley* and *M.M.* are cases brought under the IDEA rather than Section 504. Although the standard for whether a student has been afforded a free appropriate public education differs under the IDEA and Section 504, in that the IDEA focuses on whether a student has been afforded an educational benefit, *Rowley*, 458 U.S. at 200, and Section 504 focuses on whether the education provided to a student with a disability is comparable to that of a nondisabled student, *see* 34 C.F.R. § 104.33(b), the differences are limited. *See W.B. v. Matula*, 67 F.3d 484, 493–94 (3d Cir. 1995).

**III.     Free Appropriate Public Education Under Section 504**

Plaintiffs also argue that the ALJ erred in concluding that Section 504 does not provide a right to a free appropriate public education. As previously noted, federal regulations have established the free appropriate public education requirement under Section 504. 34 C.F.R. § 104.33. Yet, the ALJ's Dismissal Order contains the following contested language:

> [I]t is telling how the Parents choose to cast the first sentence of the final paragraph of their Complaint. To reiterate, they allege that MCPS "has denied [the Student] and her a family a free appropriate public education under [s]ection 504 of the [Rehabilitation Act]." This sentence obviously suggests that the Parents have attempted to dress an IDEA claim in the clothes of a section 504 complaint. Unfortunately, those section 504 garments do not fit.

ALJ Dismissal Order at 11 (first and fourth alteration added).

Having reviewed the ALJ's Dismissal Order and the contested language, the Court concludes that it is inappropriate to grant summary judgment on this ground for two reasons. First, beyond referencing the terminology in those few sentences, the ALJ said nothing to suggest that no right to a free appropriate public education existed under Section 504. At most, the contested language implies that a claim asserting the denial of free appropriate public education alone, minus discrimination, is more appropriately brought under the IDEA, which expressly and affirmatively provides for that right. See 20 U.S.C. § 1400(d)(1)(A). Second, the rest of the ALJ's Dismissal Order makes clear that the ALJ fully entertained the claim as one arising under Section 504. See ALJ Dismissal Order at 9–11 (outlining and applying the Section 504 standard). He would not have done so had he believed no such claim existed. Accordingly, the Court finds that the ALJ did not conclude that Section 504 contained no free appropriate public education requirement and finds no error on this ground.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, ECF No. 17, is granted, and Defendants' Cross-Motion for Summary Judgment, ECF No. 21, is denied. The case will be remanded to the ALJ for further administrative proceedings on the merits. A separate Order follows.

Date: September 25, 2014

THEODORE D. CHUANG
United States District Judge